STATE of Iowa, Appellee,

v.

William A. LAIN and Patsy Lain, Appellants.

No. 58879.

Supreme Court of Iowa.

Oct. 20, 1976.

Mowry, Irvine & Brooks, by Pat W. Brooks and Curtis A. Ward, Marshalltown, for appellants.

Richard C. Turner, Atty. Gen., Steven K. Sandblom, Asst. Atty. Gen., and Jared O. Bauch, Tama County Atty., for appellee.

Heard by MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and HARRIS, JJ.

UHLENHOPP, Justice.

This criminal appeal involves legal problems which arose in the prosecution of charges of conspiracy to deliver and delivery of a controlled substance. See Code 1975, § 204.401(1).

The jury could find the following from the evidence. Gary Johnson and defendants William A. Lain and Patsy Hoekstra (now Lain) previously knew each other in college. Johnson had been in Tucson, Arizona, in 1974. In March 1975, William and Patsy brought a large quantity of marijuana bricks from Tucson to Iowa. At Dee's Tavern in Gladbrook, Iowa, Johnson offered to help them get rid of the marijuana at a price of $130 per pound. Thereafter Johnson contacted various prospective purchasers and did complete some sales.

One of the prospective purchasers was Ron Paustian of Cedar Falls, Iowa, who offered to buy ten pounds for $1200, for resale. Johnson reported the offer to Patsy by telephone, and she agreed to it.

Two days later Johnson called Patsy to arrange delivery to Paustian. William and Patsy went to the farm where Johnson and Roland Wiebensohn resided, and entered the house. A little later William went out to his pickup truck and returned with a green duffel bag containing several of the marijuana bricks.

Subsequently officers searched the Johnson-Wiebensohn home and seized various articles including the duffel bag containing the bricks of marijuana. In addition they arrested Paustian when he was on his way to the Johnson-Wiebensohn home to pick up the marijuana.

Johnson pleaded guilty to conspiracy to deliver marijuana and Wiebensohn pleaded guilty to possession of marijuana. The Tama County Attorney charged William and Patsy with conspiracy to deliver and with delivery. They pleaded not guilty and stood trial. Near the conclusion of the evidence at trial, the county attorney withdrew the conspiracy charges. The jury found William and Patsy guilty of delivery.

The trial court sentenced them, and they appealed.

I. At trial, Johnson testified at some length regarding his dealings with William and Patsy. This testimony included the following:

Q. [County Attorney] And would you tell us, please, what was the nature of your conversations with the defendants at that time [at Dee's Tavern]. A. Well, in the conversation Patsy mentioned that they had a considerable amount of pot to get rid of. . . .

Q. All right. Did she say anything else with regard to this marijuana? A. I mentioned that—I just said that I could help them get rid of it maybe.

Q. Was anything mentioned as to price of this marijuana? A. One hundred and thirty dollars a pound.

Q. And who was seeking $130 a pound? A. Patsy and Lain.

They indicated that they had between 30 and 40 pounds of marijuana for sale. They told me that the marijuana came from Arizona. I was to receive anything over $130 per pound that I received if I could sell the marijuana. During the course of the conversation I left Dee's Lounge with William Lain and we drove his truck to the 4–H grounds to get a sample of the marijuana. At that time he pulled a rectangular square package from behind the seat of the truck and ripped off a corner and gave it to me in a cellophane cigarette pack. . . .

After Mr. Lain gave me the marijuana at the 4–H grounds I did not go back to Dee's Tavern but got on my motorcycle and went to Ron Paustian's residence.

Johnson also testified about his negotiations with Paustian in endeavoring to sell marijuana for William and Patsy, and other contacts he made.

William and Patsy objected at trial to Johnson's statements to Paustian and to other third persons, made in Johnson's efforts to peddle the marijuana for them. The trial court let in the statements under the co-conspirator exception to the hearsay rule. William and Patsy now contend that the State introduced no evidence of a conspiracy, other than the statements to the third persons which they say were hearsay. They assign as error the trial court's admission into evidence of Johnson's statements to third persons.

■ Assuming arguendo that Johnson's statements to third persons would otherwise be hearsay, William and Patsy appear to overlook completely Johnson's own testimony. They are correct that the State cannot bootstrap proof of a conspiracy by introduction of an alleged co-conspirator's hearsay declarations, but that is not what we have here. The State showed the conspiracy by Johnson's in-court testimony regarding his negotiations with William and Patsy. The testimony of a co-conspirator is admissible for this purpose. 22A C.J.S. Criminal Law § 759 at 1134. We are dealing at this point, of course, with proof of a conspiracy to establish admissibility of declarations, not with proof of a conspiracy under the charge of that crime in the information against William and Patsy. The latter would require corroborative evidence by virtue of § 782.5 of the Code.

■ Since Johnson's statements to third persons were admissible as the declarations of a co-conspirator, we need not consider whether such statements were also admissible as the declarations of an agent in the course of his agency. See McCormick, Evidence, § 267 at 639–641 (2nd Ed.).

We do not find merit in the present assignment of error.

II. After the county attorney withdrew the conspiracy counts near the conclusion of the evidence, defense counsel moved to withdraw Johnson's statements previously admitted under the co-conspirator exception. The trial court overruled the motion. William and Patsy contend this was error.

■ That the State no longer *charged* William and Patsy with conspiracy was immaterial to the admissibility of Johnson's statements. *State v. Huckins*, 212 Iowa 283, 234 N.W. 554; *State v. Kidd*, 239 N.W.2d 860 (Iowa); McCormick, Evidence,

§ 267 at 646 (2nd Ed.) ("The existence of a conspiracy in fact is sufficient to support admissibility, and a conspiracy count in the indictment is not required."); 22A C.J.S. Criminal Law § 756 at 1127–1128.

III. William and Patsy contended at trial and contend now, somewhat contrary to their argument the State did not show conspiracy, that their convictions of delivery cannot stand because Johnson was their accomplice and the State did not introduce corroborative evidence tending to connect them with the crime.

Section 782.5 of the Code provides that a conviction cannot stand upon the testimony of an accomplice "unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

Undoubtedly Johnson was an accomplice. Did the State introduce corroborative evidence? We have said, "The statutory requirement is met if it can fairly be said the accomplice is corroborated in some material fact tending to connect the defendant with the commission of the crime." *State v. Vesey*, 241 N.W.2d 888, 890 (Iowa).

William and Patsy contend the evidence merely placed them at the scene of the crime, in the Johnson-Wiebensohn home. Actually, however, the evidence went considerably farther to tie them in. Wiebensohn testified he had never previously seen a brick of marijuana at that home, but that he saw William in possession of a brick of it there. Robb Reinhard, a friend who was present on some of the occasions in question, also testified he saw a brick of marijuana at the Johnson-Weibensohn home, and he said it was "sitting in front of Patsy and William Lain." He testified in addition that he saw either William or Patsy in Johnson's bedroom with the green duffel bag containing the marijuana and heard Johnson say it was the most pot he had ever seen.

■ We are satisfied that this assignment of error is not meritorious.

IV. Finally, William and Patsy contend that the trial court erroneously overruled their objection to admission of a telephone bill into evidence.

The telephone at the Johnson-Wiebensohn house was listed in the name of the farm tenant, Dennis McGowan, who wanted access to a telephone. Johnson received and paid the bill for March 1975. The bill showed toll calls which matched Johnson's testimony about the calls he claimed he made, and after the trial court admitted the bill into evidence the State used it several times to support Johnson's testimony that he in fact made the calls.

The county attorney's foundation evidence for the offer of the bill, Exhibit 1, follows:

Q. [County Attorney] Mr. Johnson, referring to State's Exhibit 1, which is the telephone bill for the month of March for your residence, will you tell us please whether or not that telephone bill reflects a call to the Hoekstra residence in Grundy Center on March 21? A. Yes it does.

Mr. Brooks [defense counsel]: Your Honor, I would like to make an objection and ask that my objection be interposed before the answer because the answer was made so rapidly.

The Court: It may be, and any answer that's in the record so far is stricken.

Mr. Brooks: Your Honor, again I don't think that this exhibit has been properly identified or placed in evidence. It's not been identified as a proper and true copy of the billing. Furthermore, it's actually a business record by the phone company that's not been properly identified as such, and I think it would be improper for the witness to testify from it without the proper foundation that I have mentioned.

The Court: It hasn't been offered in evidence. I won't allow him to read from it. . . .

Q. [County Attorney] Mr. Johnson, this is a telephone listing of the calls on that telephone at your residence? A. Yes.

Q. This is the residence you occupied? A. Yes.

Q. This is the bill? A. Yes.

Q. Who paid the bill? A. I did.

. . .

County Attorney: Your Honor, I offer State's Exhibit 1 into evidence. . . .

Mr. Brooks: I would object to the exhibit on the grounds that it, on its face, indicates that it is a bill sent to someone other than the witness. Therefore, its not been properly identified as his bill which he's testified to; and furthermore, that it actually constitutes a business record of the phone company and has not been properly identified as a true and accurate and proper set of phone charges for that phone for the dates set forth on it, and there is, therefore, inadequate foundation.

The Court: Overruled. It's received.

The telephone bill was a written hearsay statement, as the State offered it to prove the telephone calls were in fact made as the bill purported to show. The State attempts to support the trial court's ruling of admissibility under our modern shopbook exception to the hearsay rule, § 622.28 of the Code. William and Patsy, on the other hand, contend the objection their attorney made to the exhibit was valid in that "it actually constitutes a business record of the phone company and has not been properly identified as a true and accurate and proper set of phone charges for that phone for the dates set forth on it, and there is, therefore, inadequate foundation."

Was the foundation sufficient? Section 622.28 authorizes admission of a writing such as this exhibit if the judge finds that it was made in the regular course of business at or about the time of the event recorded, that the sources of information from which it was made and the method and circumstances of its preparation were such as to indicate trustworthiness, and that it is not excludable under some other rule of evidence. A judge cannot make such findings without proof; evidence must be introduced warranting the findings. *In re Delaney*, 185 N.W.2d 726 (Iowa); *State v. Fisher*, 178 N.W.2d 380 (Iowa).

Here the only foundation evidence was Johnson's testimony that the bill was a listing of the calls at the residence that he occupied and that he paid the bill. We do not have any evidence that records of calls reflected by the bill were made in the regular course of the telephone company's business at or about the times of the calls, or of the sources of information from which the bill was made, or of the method and circumstances of the preparation of the bill. We give § 622.28 a broad, liberal interpretation. *State v. Fisher*, supra. But we simply cannot read out of the statute the prerequisites to admissibility. *Polson v. Meredith Publishing Co.*, 213 N.W.2d 520 (Iowa); *In re Herron*, 212 N.W.2d 474 (Iowa). The foundation evidence here does not measure up to the requirements of our decisions which we have cited, or *State v. Hall*, 259 Iowa 147, 143 N.W.2d 318. See also *Olesen v. Henningsen*, 247 Iowa 883, 77 N.W.2d 40 (prior, less liberal statute).

Was defense counsel's objection sufficient to alert the trial court to the ground of the objection? We hold that it was. The situation is unlike *State v. Welsh*, 245 N.W.2d 290 (Iowa).

The court erred in overruling the objection to the offer of Exhibit 1. The county attorney used the exhibit to corroborate Johnson's testimony that Johnson did make the calls he related, on the vital issue of whether Johnson's testimony was true that William and Patsy were implicated in the crime or whether their testimony was true that they were not involved. They are entitled to another trial on account of this error.

In the event the State's foundational evidence is found to be sufficient on retrial, this will not alone dispose of the question of admissibility of the telephone bill if its admissibility is challenged as a violation of defendant's constitutional right to confront the witnesses against him, a problem not raised or reached in this opinion.

William and Patsy assign other errors, relating to conduct of the county attorney. No necessity exists for these matters to

arise on retrial, and we trust that they will not.

REVERSED.