# IN THE COURT OF APPEALS OF IOWA

No. 13-1479
Filed October 28, 2015

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**JERME DAVID HOPWOOD,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Wapello County, E. Richard Meadows, Judge.

     Defendant appeals his convictions on five counts of second-degree sexual abuse, five counts of incest, and one count of indecent exposure. **AFFIRMED.**

     Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

     Thomas J. Miller, Attorney General, Kevin Cmelik and Tyler J. Buller, Assistant Attorneys General, and Gary Oldenburger, County Attorney, for appellee.

     Considered by Danilson, C.J., Tabor, J., and Miller, S.J.*

     *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MILLER, Senior Judge.**

Defendant Jerme Hopwood appeals his convictions on five counts of second-degree sexual abuse, five counts of incest, and one count of indecent exposure. We determine the district court did not err in concluding a videotape of the interviews with one of the child victims at the Child Protection Center was admissible under Iowa Rule of Evidence 5.807. We also determine Hopwood has not shown he received ineffective assistance because counsel did not object to the instructions on the ground the charges against him for second-degree sexual abuse and incest were not sufficiently differentiated. We affirm Hopwood's convictions.

## I.    Background Facts & Proceedings

Hopwood was separated from his wife and he had visitation with his two young daughters, A.H. and E.H., every weekend. On October 2, 2011, after a discussion about "bad touch," A.H., who was then eight years old, told a school counselor Hopwood had touched her "where you go to the bathroom." When E.H., who was then seven years old, was informed of A.H.'s statements she said, "But he said he would stop."

Videotaped interviews were conducted of A.H. and E.H. at the Child Protection Center. E.H. stated that on multiple occasions Hopwood had touched her genitals with his hand. A.H. stated Hopwood had taken off her pants and touched her genitals with his hand. A.H. stated that in one incident Hopwood touched her genitals with his penis. She drew an anatomically correct picture of

a penis with color crayons during the interview. In a second interview A.H. stated Hopwood touched her private place with his "wiener" more than one time.

Hopwood was charged with five counts of second-decree sexual abuse (three counts involving A.H. and two involving E.H.), in violation of Iowa Code section 709.3(2) (2011), a class "B" felony; five counts of incest (three counts involving A.H. and two involving E.H.), in violation of section 726.2, a class "D" felony; and one count of indecent exposure, in violation of section 709.9, a serious misdemeanor.

The State filed a motion requesting that A.H. and E.H. be permitted to testify via closed-circuit television. The children's counselor stated measures were necessary to protect them from the trauma caused by testifying in the presence of Hopwood. The court granted the motion. Thus, the children were able to be questioned and cross-examined, but they were not in the same room as Hopwood.

The State also filed a motion seeking a ruling on the admissibility under Iowa Rule of Evidence 5.807 of the videotape from the interviews at the Child Protection Center.[1] The children had been deposed on November 16, 2012, and stated they did not remember many of the facts of the case. Hopwood argued the videotape was inadmissible hearsay. A hearing was held on the motion, but the court did not rule on the admissibility of the videotaped interviews at that time, stating it would reserve ruling until after the children had actually testified.

---

[1] For purposes of the motion, the prosecutor and defense counsel worked together to produce one videotape that contained portions of the two interviews with A.H. and the interview with E.H.

The criminal trial commenced on June 4, 2013. E.H. stated Hopwood would take her clothes off and touch her private spot with his hand. She stated he moved his hand around and this happened more than one time. A.H. testified Hopwood would touch her "private place." She stated sometimes he took her clothes off and sometimes her clothes would be on. She also stated he moved his hand around and this happened more than one time. A.H., however, did not remember talking to anyone at the Child Protection Center.

The State requested to show the jury the videotaped interviews of A.H., but did not seek to introduce the videotape of the interview of E.H. Because A.H. testified she did not remember some of the events she testified to in the videotape, the State argued there was "no other available avenue" to introduce the evidence. The district court ruled the videotape of A.H. met the requirements of trustworthiness, materiality, necessity, was the most probative evidence available, and the State gave adequate notice it intended to introduce the videotape. Hopwood requested that if the videotape of A.H.'s interviews were admitted then the videotape of E.H.'s interview should be admitted as well. The court granted this request. The compiled videotape, which had been created for purposes of the motion in limine, was shown to the jury. The State then rested. The court denied Hopwood's motion for judgment of acquittal.

Hopwood testified and denied inappropriate contact with the children. At the close of all evidence, Hopwood renewed his motion for judgment of acquittal, which was again denied by the court. When questioned by the court about the jury instructions, defense counsel stated, "I have no objections to the present

instructions." During closing arguments the prosecutor described the facts applicable to each count of the trial information, differentiating the charges. Defense counsel did not discuss the individual charges, but made a general denial, stating, "The State maintains those things happened. My client maintains they did not." The jury found Hopwood guilty of each of the charges against him.

Hopwood filed a combined motion for judgment of acquittal and for a new trial, claiming (1) the court erred in admitting the videotape of A.H., (2) the facts did not support the jury's verdicts, (3) during closing arguments the prosecutor made an incorrect reference to a statement by Hopwood's ex-wife, and (4) the court should have granted his motion for judgment of acquittal. The court denied the motions. The court also denied Hopwood's motion for merger. Hopwood was sentenced to fifty years in prison. He now appeals his convictions.

## II.     Admission of Videotape

Hopwood claims the district court erred in admitting the videotape of the interviews of A.H. He asserts the videotape does not come within the residual exception found in rule 5.807 because the testimony in the videotape was not trustworthy or necessary, and did not serve the interests of justice. He also asserts the admission of the videotape was prejudicial to his defense.

"'Hearsay' is a statement, other than one made by a declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *State v. Neitzel*, 801 N.W.2d 612, 621 (Iowa Ct. App. 2011). "Hearsay is not admissible except as provided by the Iowa Constitution, by statute, by other rules of evidence, or rules of the Iowa Supreme Court." *State v.*

*Hildreth*, 582 N.W.2d 167, 169 (Iowa 1998) (citing Iowa R. Evid. 5.802).  We review the district court's decision to admit or exclude hearsay evidence for the correction of errors of law.  *Neitzel*, 801 N.W.2d at 621.

An exception to the hearsay rule is found in Iowa Rule of Evidence 5.807, the residual exception, which provides:

> A statement not specifically covered by any of the exceptions in rules 5.803 or 5.804 but having equivalent circumstantial guarantees of trustworthiness is not excluded by the hearsay rule if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.  However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

In order for evidence to be admissible under the residual exception, it must meet the requirements of: (1) trustworthiness; (2) materiality; (3) necessity; (4) service of the interests of justice; and (5) notice.  *State v. Rojas*, 524 N.W.2d 659, 662-63 (Iowa 1994).  A court should make explicit findings on each of the five requirements.  *State v. Brown*, 341 N.W.2d 10, 14 (Iowa 1983).  "[T]he residual exception to the hearsay rule may be used to admit statements made by a child sex abuse victim when the requirements of the exception are met." *Rojas*, 524 N.W.2d at 663.

**A.    Trustworthiness.**  Some indications of trustworthiness are whether the interviewer asked the child "open-ended, non-leading questions," the child's

memory of details, whether the child's descriptions are beyond the experience of an average child of that age, the consistency of the child's statements, and the child's demeanor. *Id.*

The district court properly considered these elements in its ruling:

> Regarding trustworthiness, the Court finds the interviewer established what it meant to tell the truth with [A.H.], that the interviewer used non-leading questions and not the sort of questions that would prompt a false statement.
> [A.H.]'s answers included details about where the abuse occurred as well as what happened. Her description reflected her innocence. Her responses and descriptions suggested she was actually recalling events as opposed to saying what someone had told her or making it up as she was going along.
> Her statements were consistent.
> As the jurors are able to do during her in-court testimony, they will also be able to observe her testimony and monitor her demeanor, seeing and hearing how the questions were asked and what [A.H.] said in response. And I'm referring specifically to the video here.
> The Court's conclusion is that the video recording of [A.H.]'s interview meets the requirement of trustworthiness.

We note the Iowa Supreme Court has stated, "the videotape is more reliable than many other forms of hearsay because the trier of fact could observe for itself how the questions were asked, what the declarant said, and the declarant's demeanor." *Id.* We conclude the district court did not err in finding the videotape met the requirement of trustworthiness.

**B.    Materiality.** Hopwood did not challenge the evidence on the ground of materiality during the criminal trial, and acknowledges this in his appellate brief. The district court addressed the issue, finding the evidence was material.

**C. Necessity.** In *Neitzel*, 801 N.W.2d at 623, we stated, "The admission of the evidence was necessary because [the child] was of a young age when the abuse occurred and unable to testify to the abuse years later, making the close-in-time video recitation from [the child], the most probative evidence of the abuse that occurred." *See also Rojas*, 524 N.W.2d at 663 ("Also, because the statement was the best direct evidence implicating Rojas as [the child's] abuser, it was the most probative evidence linking Rojas to the crime."); *State v. Kone*, 562 N.W.2d 637, 638 (Iowa Ct. App. 1997) (finding a taped interview met the requirement of necessity because the witness had later recanted, making the taped interview "the only means by which the State could introduce the information it had received"). The requirement of necessity is not met if the State has available to it other witnesses who could testify to the same statements. *See State v. Metz*, 636 N.W.2d 94, 100 (Iowa 2001).

The district court found the videotaped interviews of A.H. were necessary, as they were the most probative evidence available. The court noted A.H. was very uncomfortable testifying in court and she "stated that she did not remember many facts about prior proceedings, and she couldn't remember pertinent facts related to the abuse alleged in the charges that we're trying here in court." This was in "significant contrast to her demeanor and memory of facts and the details shown in the video." The court concluded, "Under the circumstances, the Court finds that the videotape of [A.H.]'s interview is the most probative evidence available and that the State has made reasonable efforts to get in sufficient testimony."

During the criminal trial A.H. testified she could not remember many of the incidents and details she had related during her videotaped interviews. Because she was unwilling or unable to testify about certain incidents, the videotape was the most probative evidence about these incidents. *See Neitzel*, 801 N.W.2d at 623. We find no error in the court's conclusion the requirement of necessity had been met.

**D.** **Interests of Justice.** Admitting evidence serves the interests of justice where appropriate showings of reliability and necessity have been made and the admission of the evidence advances the goal of truth-seeking. *Rojas*, 524 N.W.2d at 663. The district court stated, "Since the evidence is trustworthy, material, and is the most probative evidence available, it is in the interests of justice that it be admitted. It advances the goal of seeking truth in judicial proceedings." We find no error in this statement.

**E.** **Notice.** Hopwood does not dispute that notice was adequately given.

After considering each of the five requirements for admissibility of evidence under the residual hearsay exception, rule 5.807, we find no error in the court's conclusion the videotape of A.H.'s interviews at the Child Protection Center was admissible. The evidence met the requirements of trustworthiness, necessity, and the admission of the evidence served the interests of justice. As noted, Hopwood did not challenge the introduction of the evidence on the grounds of materiality or notice. Because we find no error in the admission of the videotape we do not address the issue of prejudice.

### III.    Ineffective Assistance

Hopwood has raised claims of ineffective assistance by defense counsel. We review claims of ineffective assistance of counsel de novo. *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). To establish a claim of ineffective assistance of counsel, a defendant must show (1) the attorney failed to perform an essential duty, and (2) prejudice resulted to the extent it denied the defendant a fair trial. *State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009). A defendant has the burden to show by a preponderance of the evidence counsel was ineffective. *See State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992).

**A.    Confrontation Clause.** Hopwood claims he received ineffective assistance because defense counsel did not object to the admission of the videotape based upon the Confrontation Clause. "Where the declarant whose testimony the state wishes to introduce is present at trial, gives his sworn testimony at trial, and is subject to cross-examination by the defense as happened in petitioner's trial, the Confrontation Clause is satisfied." *State v. Froning*, 328 N.W.2d 333, 336 (Iowa 1982) (citation omitted); *see also Crawford v. Washington*, 541 U.S. 36, 59 n.9, 124 S. Ct. 1354, 1369 n.9, 158 L. Ed. 2d 177, 197 n.9 (2004). These are the facts in this case. We will not find counsel ineffective for failing to raise a meritless issue. *State v. Smothers*, 590 N.W.2d 721, 724 (Iowa 1999).

**B.    Jury Instructions.** Hopwood contends defense counsel should have objected to the instructions because they did not sufficiently differentiate between the offenses. The trial information did not differentiate between the five

counts of second-degree sexual abuse except to specify three of the counts involved A.H. and two involved E.H. Likewise, the five counts of incest in the trial information were differentiated only by specifying three counts involved A.H. and two involved E.H. The jury instructions also did not differentiate between the charges except to provide whether the count applied to charges involving A.H. or E.H. The jury was instructed, "You must determine whether the defendant is guilty or not guilty separately on each count."

The better practice is to differentiate the marshaling instructions where possible. *State v. See*, 805 N.W.2d 605, 607 (Iowa Ct. App. 2011). In considering a defendant's claim of ineffective assistance when defense counsel did not object to identical marshaling instructions on three counts of second-degree sexual abuse, we determined the defendant could not show prejudice because (1) the minutes of evidence combined with discovery provided the defendant with adequate notice he was charged with three distinct and different types of acts, (2) the jury heard testimony during the criminal trial about three separate incidents, (3) the jury was instructed to make a separate decision on each count, and (4) during closing arguments the prosecution and defense "were in complete agreement in relating each of the three separate and distinct alleged acts of sexual abuse to each of the three separate marshaling instructions." *Id.* We concluded the defendant "had adequate notice of what he was to defend against, he was not exposed to any danger of double jeopardy, and there existed no reasonable probability of jury confusion." *Id.*

In the present case, during closing arguments the prosecutor differentiated out the counts as follows: (I) penis to genital contact with A.H.; (II) hand to genital contact with A.H. on Black Hawk Road, when she was in kindergarten; (III) hand to genital contact with A.H. on Church Street; (IV) hand to genital contact with E.H. before he stopped for a period of time; (V) hand to genital contact with E.H. after he stopped for awhile; (VI) incest relating to count I; (VII) incest relating to count II; (VIII) incest relating to count III; (IX) incest relating to count IV; (X) incest relating to count V; (XI) indecent contact by exposing his penis to A.H.

From the minutes of evidence Hopwood was aware the State alleged he had engaged in hand to genital contact with A.H. and E.H. on multiple occasions and at least one incident of genital to genital contact with A.H. The videotape of the interviews of A.H. and E.H. at the Child Protection Center was available to Hopwood and would have further elucidated the factual allegations against him. A.H. stated the incidents began when she was in kindergarten and continued until she told a counselor at school while she was in second grade. She stated there had been hand to genital contact and penis to genital contact. E.H. stated the incidents started at the beginning of second grade, stopped for awhile when she told Hopwood to stop, then began again and continued until A.H. told the counselor at school. E.H. described hand to genital contact.

During the trial A.H. again testified the incidents began when she was in kindergarten and continued until she was in second grade. She testified Hopwood touched her genitals with his hand, and this happened more than one time. E.H. testified Hopwood touched her genitals with his hand, and this

occurred more than once.  As noted above, the videotape from the interviews at the Child Protection Center was admitted into evidence, and so the jury saw the evidence outlined above from the videotape as well.   The children's mother testified that when she separated from Hopwood in 2007 he lived on Black Hawk Road, then in August 2008 he moved to Church Street.

We first note Hopwood's arguments on this ground do not apply to the offense of indecent exposure because he was only charged with one count of indecent exposure.  Because he is not challenging this conviction on the ground of ineffective assistance of counsel, we determine his conviction for indecent exposure should be affirmed.

We also determine Hopwood has not shown he received ineffective assistance because counsel did not object to the instructions on the ground the charges against him for second-degree sexual abuse and incest were not sufficiently differentiated.  Through discovery and testimony at trial Hopwood was aware of the different claims against him.  The jury was instructed to make separate decisions on each of the charges.  Additionally, the prosecutor specifically discussed the factual basis for each count, making sure the jury was aware how each count differed from the others.  The evidence supports the prosecutor's distinctions between the charges.  We note that during closing arguments defense counsel did not discuss each count, but rather made a general denial of the claims.  As in *See*, we determine Hopwood "had adequate notice of what he was to defend against, he was not exposed to any danger of

double jeopardy, and there existed no reasonable probability of jury confusion." *See id.*

We affirm Hopwood's convictions for five counts of second-degree sexual abuse, five counts of incest, and one count of indecent exposure.

**AFFIRMED.**